```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION

STYGIAN SONGS, et al.          §
                               §
VS.                            §   CIVIL ACTION NO. 4:10-CV-178-Y
                               §
THOMAS ELMER JOHNSON           §
```

ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment (doc. 21) filed by plaintiffs Stygian Songs, Lormar Music A Corporation, Odnil Music Limited, Fifty-Six Hope Road Music Limited, Val Halen Music, and J. Albert & Son (USA) Inc. After review, the Court will grant the motion.

I. Background

This is a copyright-infringement case. Defendant Thomas Johnson is the sole proprietor of TJ's Sports Bar ("TJ's") in Arlington, Texas. (App. to Pls.' Mot. Summ. J. 101-02.) Plaintiffs are the copyright owners of certain musical compositions, including "Mr. Roboto," "Guitar Town," "No Woman No Cry," "Jump," and "You Shook Me All Night" (collectively, "the Songs"). (*Id.* at 4-5, 221-25, 232-45, 252-94, 306-15, 322-34.) Plaintiffs are also members of the American Society of Composers, Authors, and Publishers ("ASCAP"), which licenses the non-dramatic public performance of its members' musical compositions. (*Id.* at 226-30, 246-50, 295-304, 316-20, 335-41.)

For several years, Johnson has employed Ron Bradley of Signature Sound Productions to provide disc-jockey and karaoke services at TJ's. (*Id.* at 104, 107-09, 515.) On May 2, 2009, Maria Kessler Quach, whom ASCAP had hired to visit TJ's, made a list of the musical compositions that were performed through Bradley's services that evening. (*Id.* at 194-207, 346-47, 515.) According to Quach's report, a number of musical compositions were publicly performed that night, including the Songs. (*Id.*) At that time, neither Johnson nor Bradley had obtained a license to publicly perform the Songs, and neither of them has since pursued such a license. (*Id.* at 5-6, 13-14, 130, 344, 516.)

Prior to Quach's visit in May 2009, ASCAP representatives made numerous attempts to inform Johnson, both in person and by telephone, that he needed a license to lawfully hold public performances of the copyrighted musical compositions of ASCAP's members. (*Id.* at 6, 15, 17-98, 342-43, 350-476.) In addition, Johnson received various pieces of correspondence from ASCAP that, among other things, offered him a license agreement, encouraged him to seek legal counsel, and apprised him of the methods by which he could obtain a license for holding public performances of the Songs. (*Id.* at 6, 15, 17-98, 342-43, 375, 401, 403-04, 406, 424-25, 435, 442, 449-50, 457.) Johnson acknowledged having received this correspondence from ASCAP. (*Id.* at 6, 15, 17-98, 130-34, 147-

48.) Nevertheless, at no point did Johnson attempt to respond to ASCAP or pursue a license. (*Id.* at 131-34.)

In light of Johnson's failure to procure a license, ASCAP engaged a second investigator, Mark Carrillo, to visit TJ's on July 7, 2010, and to investigate whether Johnson was continuing to hold public performances of ASCAP members' musical compositions. (*Id.* at 348, 491-505.) Carrillo's investigation confirmed that public performances of songs within the ASCAP repertory had continued to occur at TJ's, despite the notices ASCAP had sent Johnson regarding licensure. (*Id.*)

Plaintiffs, therefore, filed the instant lawsuit alleging that Johnson infringed their copyrights in the Songs by facilitating the public performance of the Songs at TJ's on May 2, 2009. By their motion for summary judgment, Plaintiffs seek an injunction prohibiting any future public performances of the copyrighted musical compositions of ASCAP's members and $50,000 in statutory damages. Additionally, Plaintiffs seek an award of attorneys' fees and costs.

II. Legal Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as

opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact is, or cannot be, genuinely in dispute, a party must either (1) cite particular parts of materials on the record (e.g., affidavits), (2) show that the materials cited by the adverse party do not establish the presence or absence of a genuine dispute, or (3) show that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). Although the Court "need consider only the cited materials, . . . it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When "the movant bears the burden of proof on an issue, the movant 'must establish beyond peradventure all of the essential elements of the claim' to warrant judgment in its favor." *EMI April Music Inc. v. Know Group, LLC*, No. 3:05-CV-1870-M, 2006 WL 3203276, at *1 (N.D. Tex. Nov. 6, 2006) (Lynn, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986)). Once the movant has done this, "the burden shifts to the nonmovant to show that summary judgment is inappropriate." *Id.* (citing *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir.1991))." To make this showing, the nonmovant must "go beyond the pleadings and

4

designate specific facts proving that a genuine [dispute] of material fact exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmovant "may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts." *Id.* (citation omitted). Prods., Inc., 530 U.S. 133, 152 (2000).

The Court, in evaluating whether summary judgment is appropriate, "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "[I]f no reasonable juror could find for the non-movant," summary judgment should be granted. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

III. Analysis

   A. Infringement

"The United States Copyright Act bestows upon the owner of a copyright the exclusive right to do or authorize the public performance of a copyrighted musical composition." *Controversy Music v. Down Under Pub Tyler, Inc.*, 488 F. Supp. 2d 572, 576 (E.D. Tex. 2007) (citing 17 U.S.C.A. § 106(4) (West 2011)). Consequently, "[i]t is a violation of copyright in a musical composition

to perform that work publicly without a license." *Broadcast Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, at *1 (5th Cir. 1994) (citing 17 U.S.C.A. § 106(4)) (unpublished). To prevail in an action for infringement of a copyrighted musical composition, a plaintiff must establish the following:

> (1) the originality and authorship of the compositions involved;
>
> (2) compliance with all formalities required to secure a copyright under Title 17 of the United States Code;
>
> (3) that the plaintiffs are the proprietors of the copyrights of the composition involved in the action;
>
> (4) that the compositions were performed publicly; and
>
> (5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*EMI April Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 622 (N.D. Tex. 2008) (Lynn, J.) (citations omitted).

Through the declaration of Richard Reimer, ASCAP's Senior Vice President for Legal Services, and its supporting exhibits, Plaintiffs establish that they own valid copyrights in the Songs, thereby satisfying the first three elements of an infringement cause of action. (App. to Pls.' Mot. Summ. J. 217-341.) With regard to the fourth element, Plaintiffs offer the Quach declaration, which indicates that the Songs were publicly performed at TJ's on May 2, 2009. ((App. to Pls.' Mot. Summ. J. 194-207.) In addition, Plaintiffs offer the declaration of Douglas A. Jones, ASCAP's Manager of Litigation Services for General Licensing, as

proof of the authenticity of Quach's investigative report. (*Id.* at 346-47, 478-89.) Finally, to establish the fifth element (i.e., lack of permission), Plaintiffs point to Johnson's admission that he has never obtained a license--from ASCAP or from Plaintiffs directly--to publicly perform the Songs. (App. to Pls.' Mot. Summ. J. 5-6, 13-14.). Plaintiffs also offer Johnson's deposition testimony that he's "never had an ASCAP license." (*Id.* at 130.)

Johnson offers no evidence to dispute Plaintiffs' case.[1] As an initial matter, Johnson does not dispute that Plaintiffs own valid copyrights in the Songs. (*Id.* at 4-5.) Moreover, Johnson does not deny that the Songs were publicly performed at TJ's on May 2, 2009; he merely states that he does not know whether the Songs were played because he was not there. (App. to Pls.' Mot. Summ. J. 145.) Furthermore, Johnson does not claim to have obtained a license to publicly perform the Songs. Indeed, he admits he does not have one. (*Id.* 5-6, 13-14, 130.)

Johnson's response brief consists primarily of various technical objections to Plaintiffs' summary-judgment evidence. For example, Johnson argues that Plaintiffs have failed to establish that the Songs were, in fact, publicly performed in May 2009 because the Quach declaration is not dated, as required by 28

---

[1] Johnson does offer a declaration in support of his response brief, but the declaration does not address the merits of this case. (App. to Def.'s Resp. Br. 116.) Furthermore, at no point in Johnson's response brief does Johnson affirmatively deny Plaintiffs' allegations concerning infringement. He simply claims he lacks knowledge of the facts surrounding May 2, 2009, and challenges Plaintiffs' evidence regarding those facts.

7

U.S.C.A. § 1746. Similarly, Johnson raises hearsay objections to a number of the pages in Plaintiffs' summary-judgment appendix documenting ASCAP's attempts to contact Johnson. In reply, rather than go toe-to-toe with Johnson on the evidentiary objections, Plaintiffs contend that Johnson's objections are not sufficient to create a genuine dispute as to the material facts in this case because Plaintiffs' evidence on each of the relevant issues is cumulative. That is, Plaintiffs contend that, with respect to each element of their case, Johnson's objections address only some--not all--of the supporting evidence. Thus, according to Plaintiffs, even if Johnson's evidentiary objections were sustained, the record would nevertheless contain undisputed evidence of infringement. Further, Plaintiffs contend that, in any event, Johnson's objections are highly technical and do not create a "genuine" dispute as to the facts.

After review, the Court agrees with Plaintiffs. There is no genuine dispute as to the material facts in this case concerning infringement. Plaintiffs have offered over 500 pages of evidence-- the vast majority of which has not been objected to--establishing that the Songs were performed at TJ's without permission on May 2, 2009. Johnson has offered no evidence in response. Moreover, even assuming Johnson's evidentiary objections are valid, they do not preclude summary judgment because they do not account for the entirety of Plaintiffs' evidence on any particular element of their

case. Therefore, because Plaintiffs' evidence showing that Johnson infringed their copyrights on May 2, 2009, is undisputed, Plaintiffs are entitled to summary judgment on the issue of infringement.

B. Injunctive Relief

Under § 502(a) of the Copyright Act, "the [C]ourt may issue a permanent injunction 'to prevent or restrain infringement of a copyright.'" *Santander Consumer USA Inc. v. Girdner*, No. 3:09-CV-866-L, 2009 WL 4251123, at *2 (N.D. Tex. Nov. 30, 2009) (Lindsay, J.) (quoting 17 U.S.C.A. § 502(a)). "To obtain a permanent injunction, a plaintiff must (1) succeed on the merits; (2) have no adequate remedy at law; (3) show that the threatened injury outweighs any damage to the defendant; and (4) demonstrate that the injunction will not disserve public interest." *Arista Records LLC v. Salas*, No. 3:08-CV-855-O, 2009 WL 290185, at *3 (N.D. Tex. Feb. 5, 2009) (O'Connor, J.) (citing *Picker Int'l v. Blanton*, 756 F. Supp. 971, 978 (N.D. Tex. 1990) (Porter, J.)).

All four of these elements are present in the instant case. First, Plaintiffs have succeeded on the merits by establishing Johnson's liability for copyright infringement as a matter of law. Second, a damages recovery, though it will help compensate for past infringements, will not prove effective at guarding against future infringements. Third, Plaintiffs' threatened injury (i.e., future infringement of their copyrights) outweighs the potential burden on

Johnson. An injunction will simply require Johnson to procure a license, which is something he is already required to do if he wishes to host public performances of copyrighted music. Fourth, an injunction in this case would not disserve the public interest. To the contrary, it is consistent with copyright law's purpose of protecting originality and creativity. *See, e.g.*, *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149 (5th Cir. 2004) (noting that copyright claims were designed to protect originality and creativity); *Alcatel USA, Inc. v. DGI Technologies., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999) ("The purpose of copyright law is to promote and protect creativity."). Accordingly, injunctive relief is appropriate in this case.

C. Statutory Damages

Section 504(c)(1) of the Copyright Act states that a "copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any work." 17 U.S.C.A. § 504(c)(1). For each infringed work, the copyright holder must recover "not less than $750 or more than $30,000 as the court considers just." *Id.* Moreover, "[i]n a case where the . . . infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* at § 504(c)(2).

10

Plaintiffs assert that Johnson's infringement of their copyrights was willful, pointing out that Johnson admitted to receiving correspondence from ASCAP but nevertheless declined to read or respond to that correspondence. (*Id.* at 6, 15, 17-98, 130-34, 147-48.) In support, Plaintiffs cite *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991), in which the United States Court of Appeals for the Seventh Circuit observed that "evidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness."

In his deposition, Johnson stated that he was under the impression that Bradley and Signature Sound Productions were licensed and that he therefore did not need one. (App. to Pls.' Mot. Summ. J. 131-133.) Later in his deposition, however, Johnson conceded that he could not recall anyone from Signature Sound Productions ever telling him they were licensed. (*Id.* at 133.) In any event, the undisputed evidence shows that Johnson received ASCAP's notices regarding his need for a license, that he disregarded the notices, that he declined to consult an attorney about whether he needed a license, and that he continued to host public performances of ASCAP members' musical compositions. (*Id.* at 6, 15, 17-98, 130-34, 147-48, 348, 491-505.) This evidence is more

11

than sufficient to support a finding that Johnson willfully infringed Plaintiffs' copyrights.

Nevertheless, such a finding is unnecessary because Plaintiffs seek statutory damages of only $10,000 per song, an amount that is within the limits of 17 U.S.C.A. § 504(c)(1). Plaintiffs' summary-judgment evidence establishes that, between 2004 and the filing of the instant motion, Johnson "saved" approximately $4,624 in licensing fees for TJ's and an additional $11,856 in licensing fees for his other establishments. (App. to Pls.' Mot. Summ J. 344-45, 347.) And "[t]his Court has a duty under the relevant case law to put [Johnson] 'on notice that it costs less to obey the copyright laws than to violate them,' so [Johnson] will not 'be able to sneer in the face of copyright owners and copyright laws.'" *Jet Rumeurs*, 632 F. Supp. 2d at 625-26 (quoting *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988). With this in mind, the Court concludes that $50,000 is an appropriate amount of statutory damages in the instant case.

### D. Attorneys' Fees and Costs

Under § 505 of the Copyright Act, the Court may in its discretion award attorneys' fees and costs to the prevailing party in a copyright-infringement case. *See* 17 U.S.C.A. § 505. Within the Fifth Circuit, an award of attorneys' fees in copyright cases is "the rule rather than the exception, and should be awarded routinely." *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403,

411 (5th Cir. 2004) (citing *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998); *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994)).

Plaintiffs, having demonstrated Johnson's liability for infringement as a matter of law, are the prevailing parties in this case. This makes them eligible to recover attorneys' fees under § 505. Moreover, given that Johnson necessitated the filing of the instant lawsuit by refusing to obtain a license, considerations of equity support an award of fees to Plaintiffs. Thus, the Court will award Plaintiffs attorneys' fees and costs pursuant to § 505.

IV. Conclusion

In light of the foregoing, the Court concludes that Johnson has infringed Plaintiffs' copyrights as a matter of law. Accordingly, Plaintiffs' motion for summary judgment is GRANTED. Johnson is ENJOINED from facilitating any further public performances of ASCAP members' copyrighted musical compositions without first obtaining the requisite license(s). Additionally, Johnson is liable to Plaintiffs for statutory damages in the amount of $50,000. And finally, no later than fourteen (14) days from the date of this order, Plaintiffs shall submit an application for attorneys' fees and costs, establishing the amount of fees and costs requested and discussing the reasonableness of that amount under the "lodestar" analysis and the factors discussed in *Johnson*

13

*v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeson*, 489 U.S. 871 (1989). *See, e.g., Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).

SIGNED March 3, 2011.

                                          /s/ Terry R. Means
                                          TERRY R. MEANS
                                          UNITED STATES DISTRICT JUDGE